UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MIGUEL A. RENDON,

v.

UNITED STATES OF AMERICA.

Case No. 8:06-cr-472-T-17TGW
8:10-cv-2900-T-17TGW

## ORDER

This cause is before the Court on Miguel A. Rendon's timely-filed Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (hereinafter "motion" or "motion to vacate") (Docs. CV-1, CR-200) filed on December 27, 2010; the Government's Response in Opposition to Rendon's Motion to Vacate (Doc. CV-12) filed on March 30, 2011; and Rendon's Reply (Doc. CV-17) filed on May 26, 2011. A review of the record and applicable law demonstrates that, for the following reasons, Rendon's motion to vacate must be denied as to grounds two, three, four, five, and six. An evidentiary hearing will be set as to ground one.

## BACKGROUND AND PROCEDURAL HISTORY

This case stems from an investigation conducted by federal, state, and local law enforcement that targeted a large-scale drug trafficking organization operating in the Middle District of Florida, Texas, and California. PSR ¶ 9. The investigation involved the use of confidential informants, physical surveillance, telephone records, and federal wiretaps. *Id.* The wiretaps led to the interception of hundreds of drug-related calls involving Rendon and co-conspirators. *Id.* ¶ 20. Law enforcement was ultimately able to seize over 500 kilograms of cocaine and approximately three million dollars in drug proceeds and assets from the

1

organization. Doc. CR-174 at 49.

Evidence obtained by law enforcement revealed that Rendon had been involved in the conspiracy from at least the late 1990's through Spring 2006, and that he had played a multi-faceted role in the organization. PSR ¶ 11. Rendon's role included distributing kilogram quantities of cocaine and pound quantities of both methamphetamine and marijuana to co-conspirators; investing in shipments of these drugs; providing high-interest loans to finance the organization's drug operation; storing large amounts of drug proceeds for the organization; and renting properties to members of the conspiracy for illicit use, sometimes in exchange for drug payments. *Id.* ¶¶ 11–19.

On November 14, 2007, Rendon was charged via a Superseding Indictment[1] with conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, 500 grams or more of methamphetamine, and 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count One). Doc. CR-61.

On May 12, 2008, Rendon's case proceeded to trial. Docs. CR-158, CR-162. Immediately prior to the commencement of trial, the Court held a hearing during which defense counsel, Patrick Doherty, read into the record the contents of a letter dated May 9, 2008, from Dr. Douglas R. Sinclair, which addressed Rendon's memory and/or mental competence. Doc. CR-109 at 3–4 [transcript of pretrial hearing]; *see* Court Exh. 1. At the hearing, attorney Doherty also referred to an April 6, 2007, medical report from Rendon's treating physician, Dr. Philip Rasulo, which essentially stated that Rendon's recent and remote memory were normal. Doc. CR-109 at

---

[1] On November 16, 2006, a federal grand jury charged Rendon in a one-count indictment with conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). Doc. CR-1.

2

16–17; *see* Court Exh. 2. Attorney Doherty stated that he brought the matter to the Court's attention out of "an abundance of caution" (Doc. CR-109 at 21), but he made clear that, in the "year or so" he had been representing Rendon, he "never had any impression that . . . [Rendon] had a mental or memory problem." *Id.* at 19. He also indicated that he believed Rendon was competent to stand trial. *Id.* at 21. Thus, attorney Doherty did not move for a competency hearing.

During the seven-day trial, the Government called six cooperating defendants who testified regarding Rendon's involvement in the conspiracy. Docs. CR-155–56, CR-158, CR-162, CR-164–65, CR-168–69, CR-170, CR-174. The jury listened to a number of wiretap calls in which Rendon and co-conspirators used code words—including terms such as "ice," "white girls," "young girls," "virgins," "shirts," and "grass"—to refer to the cocaine, methamphetamine, and marijuana they were trafficking. PSR ¶ 20. In addition, the Government presented testimony and evidence concerning the large quantities of narcotics, drug proceeds, and drug distribution paraphernalia that law enforcement seized during the course of its investigation, much of which was seized from properties Rendon owned and rented to co-conspirators. PSR ¶¶ 12–21. The Government also presented testimony regarding a box containing $27,930 that Rendon allegedly found on his property. PSR ¶ 15; Doc. CR-169 at 91–106. Furthermore, testimony revealed that when law enforcement confronted Rendon about his role in the conspiracy, he admitted to participating in the off-loading of "bricks" of cocaine. Doc. CR-169 at 105–06. Rendon claimed, however, that he had thought he was unloading money, not drugs. *Id.*

In Rendon's case-in-chief, attorney Doherty called several witnesses—a friend of Rendon and member of the local community, Kenneth Lee Bright, Jr. (*id.* at 171–78), Rendon's sister-in-law, Jean Johnson (*id.* at 180–185), and Rendon's wife, Carol Rendon (*id.* at 187–244)—in an

3

attempt to refute the Government's evidence.

At the conclusion of the case, the jury deliberated for several hours before returning a verdict finding Rendon guilty of conspiracy to distribute all three of the drugs alleged in the Superseding Indictment. Docs. CR-118, CR-165. In addition, the jury found Rendon accountable for the maximum quantities of those drugs set by statute: 5 kilograms or more of cocaine, 500 grams or more of methamphetamine, and 1,000 kilograms or more of marijuana. Doc. CR-118.

On September 19, 2008, the Court sentenced Rendon to 235 months imprisonment. Docs. CR-150, CR-166.

Rendon directly appealed his final judgment to the Eleventh Circuit, arguing that this Court abused its discretion by admitting certain evidence at trial. On September 28, 2009, the Eleventh Circuit affirmed Rendon's conviction. *United States v. Rendon*, 359 Fed.App'x 80 (11th Cir. 2009) (per curiam); Doc. CR-187.

On December 27, 2010, Rendon filed the instant 28 U.S.C. § 2255 motion in which he alleges that attorney Doherty was ineffective for the following reasons: (1) counsel failed to properly challenge Rendon's competency to stand trial (Docs. CV-1 at 4, CV-2 at 3–11); (2) counsel failed to properly cross-examine and impeach the Government's witnesses (Docs. CV-1 at 4, CV-2 at 11–16); (3) counsel failed to elicit further favorable testimony from Rendon's wife (Docs. CV-1 at 4–5, CV-2 at 16–17); (4) counsel failed to present the testimony of defense witness Charles Britt (Docs. CV-1 at 5, CV-2 at 17–18); (5) counsel failed to object to the introduction of evidence relating to weapons that were found during the search of Rendon's residence (Docs. CV-1 at 5, CV-2 at 19–20); and (6) counsel failed to preserve for appeal the issues raised on direct appeal. Docs. CV-1 at 6, CV-2 at 20.

## COGNIZABILITY

Ineffective assistance of counsel claims are cognizable under 28 U.S.C. § 2255. *See, e.g., Lynn v. United States*, 365 F. 3d 1225, 1234 n. 17 (11th Cir. 2004). Thus, the six claims that Rendon asserts, all of which are claims of ineffective assistance of counsel, are cognizable under § 2255.

## STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). Because a lawyer is presumed to be competent to assist a defendant, the burden is on the accused to demonstrate the denial of effective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 658 (1984). Ineffectiveness of counsel may be grounds for vacating conviction if (1) counsel's performance fell below an objective standard of reasonable professional assistance, and (2) the defendant was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687, 694. "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. Thus, if the defendant fails to show that he was prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. *Id.*

For performance to be deficient, the defendant must establish that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *Id.* at 690. In other words, when reviewing counsel's decisions, "the issue is not what is possible

or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Furthermore, "[t]he burden of persuasion is on a [defendant] to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable." *Id.* This burden of persuasion, though not insurmountable, is a heavy one. *Id.* at 1314. "'Judicial scrutiny of counsel's performance must be highly deferential,'" and courts "must avoid second-guessing counsel's performance." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* (quoting *Strickland*, 466 U.S. at 689–90). Therefore, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168, 186 (1986)).

The second prong of the *Strickland* test requires the defendant to demonstrate "that there is a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

## DISCUSSION

### Grounds Two, Three, Four, and Five

Rendon claims that attorney Doherty was ineffective for failing to pursue various strategies at trial. Docs. CV-1 at 4–6, CV-2 at 11–20. However, it is well settled that a defense counsel's strategic decisions at trial that fall within the range of reasonable professional competence are not vulnerable to collateral attack. *See, e.g., Weber v. Israel*, 730 F.2d 499, 508

(7th Cir. 1984); *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980). A defense attorney's tactical decision amounts to ineffective assistance of counsel "only if it was so patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983); *see also Strickland v. Washington*, 466 U.S. 668, 690 (1984). Furthermore, tactical decisions made by counsel do not render assistance ineffective merely because, in retrospect, it is apparent that counsel chose the wrong course. *Adams v. Balkcom*, 688 F.2d 734, 739 (11th Cir. 1982); *see also Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988).

Thus, in deciding an ineffective assistance of counsel claim, a court must judge the reasonableness of counsel's challenged tactical decision on the facts of the particular case, viewed as of the time of counsel's conduct. *Strickland*, 466 U.S. at 690. The inquiry in this regard is not whether counsel's specific strategy judgments were wrong, but whether some reasonable lawyer might have acted similarly. *Chandler v. United States*, 218 F.3d at 1314–15 n.15 (11th Cir. 2000) (en banc). The Court must also presume that counsel's tactical decision was reasonable unless the petitioner demonstrates that counsel's strategy was unreasonable. *Id.* at 1318. Moreover, to uphold a lawyer's strategy, a court "need not attempt to divine the lawyer's mental processes underlying the strategy." *Id.* at 1315 n.16.

In grounds two, three, and four, (Docs. CV-1 at 4–5, CV-2 at 11–18), Rendon asserts that attorney Doherty's examination and cross-examination of witnesses, as well as his decisions regarding which witnesses to call, manifest his ineffectiveness. Rendon argues that attorney Doherty was ineffective for failing to properly cross-examine and impeach certain government witnesses, particularly Robert Masias (ground two) (Docs. CV-1 at 4, CV-2 at 11–16); failing to elicit further favorable testimony from Rendon's wife, Carol Rendon (ground three) (Docs. CV-1

at 4–5, CV-2 at 16–17); and failing to call attorney, Charles Britt, as a defense witness (ground four). Docs. CV-1 at 5, CV-2 at 17–18. These claims challenge attorney Doherty's strategic and tactical decisions as to how best to attack the Government's case. Instead of demonstrating that such decisions were unreasonable, Rendon engages in, and urges the Court to engage in, "Monday morning quarter backing."

In fact, attorney Doherty conducted an extensive cross-examination of Robert Masias, one of the Government's cooperating defendants. The cross-examination included concentrated attacks on Masias's motives for testifying against Rendon in exchange for a lighter sentence; Masias's reluctance to give specific dates; the absence of any records of drug transactions to corroborate Masias's story; and the absence of recorded conversations between Masias and Rendon relating to drug deals. Doc. CR-155 at 127–63, 177–79. In addition, attorney Doherty conducted an extensive examination of defense witness, Carol Rendon. *See* Doc. CR-169 at 187–218. Finally, attorney Doherty's decision not to call defense witness Charles Britt was well within the ambit of his professional discretion.

Ground five—that attorney Doherty was ineffective for failing to make a relevance objection to the admission of the weapons found at Rendon's residence (ground five) (Docs. CV-1 at 5, CV-2 at 19–20, CR-169 at 114–18)—is likewise unsustainable. It is well settled that "guns are a tool of the drug trade," and that "[t]here is a frequent and overpowering connection between the use of firearms and narcotics traffic.'" *United States v. Pham*, 463 F.3d 1239, 1246 (11th Cir. 2006) (citation omitted); *accord Castillo v. United States*, 200 F.3d 735, 737 (11th Cir. 2000). Thus, attorney Doherty's decision not to object to the admission of these weapons was reasonable.

Even if attorney Doherty's decisions regarding the cross-examination of government

8

witnesses, the examination of Rendon's wife, the value of Charles Britt's testimony,[2] and the introduction of evidence related to weapons[3] were unreasonable or deficient, Rendon has not satisfied the second prong of *Strickland*. Given the large amount of government evidence and testimony presented at trial,[4] Rendon has not adequately shown that "the factfinder would have had a reasonable doubt respecting guilt," *Strickland v. Washington*, 466 U.S. 668, 695 (1984), but for attorney Doherty's alleged ineffectiveness. Thus, Rendon has not established prejudice, and this Court must reject grounds two, three, four, and five.

### Ground Six

Ground six—that attorney Doherty was constitutionally ineffective for failing to properly preserve two evidentiary issues for appeal (ground six) (Docs. CV-1 at 6, CV-2 at 20)—is flawed. The two evidentiary issues involve this Court's admission of certain out-of-court statements made by Rendon's co-conspirators, as well as this Court's admission of testimony regarding a suicidal gesture Rendon made during an interview with law enforcement.[5] Doc. CR-

---

[2] The Court acknowledges receipt of the recently-filed affidavits of Carol Rendon and Charles M. Britt, III. Doc. CV-18. However, Rendon has not shown that the information contained in these affidavits is so significant as to undermine the confidence in the outcome of Rendon's trial.

[3] In his Reply, Rendon asserts that "the inquiry [relating to prong two of *Strickland*] is whether a court would have excluded the evidence regarding the weapons if counsel had objected." Doc. CV-17 at 7. However, the proper inquiry is whether there is a reasonable probability that the result of the proceeding would have been different had attorney Doherty stated an objection.

[4] Evidence in this case included the testimony of six cooperating defendants and the presentation of a number of wiretap calls. Docs. CR-155–56, CR-158, CR-162, CR-164–65, CR-168–69, CR-170, CR-174; PSR ¶ 20.

[5] At sidebar, attorney Doherty stated his objection to testimony concerning Rendon's suicidal gesture before the Court ruled that it would allow the testimony into trial (Doc. 169 at 133), and attorney Doherty reiterated his objection after the Court ruled. *Id.* at 136.

169 at 133–36. Rendon claims that attorney Doherty's handling of these evidentiary matters subjected them on appellate review to the higher standard of plain, rather than harmless, error.

This argument, however, is wholly undermined by the Eleventh Circuit's rejection of these evidentiary challenges on appeal. As Rendon himself acknowledges in his motion to vacate (Doc. CV-2 at 20 n. 14), the Eleventh Circuit stated:

> The parties dispute the appropriate standard of review as to the challenged evidentiary rulings in this case. Because we conclude there was no error as to either issue on appeal, the standard of review is not outcome determinative, and we need to determine whether we review the district court's rulings for abuse of discretion or plain error.

*United States v. Rendon*, 359 Fed.App'x 80, 81 n.1 (11th Cir. 2009) (per curiam); Doc. CR-187 at 5 n.1. Because the Eleventh Circuit concluded that there was no error relating to these evidentiary matters, Rendon has not satisfied, and cannot satisfy, either prong of *Strickland*. Thus, the Court must reject ground six of Rendon's motion.

### Ground One: Competency

In ground one, Rendon claims that attorney Doherty was ineffective for failing to move for a competency hearing prior to trial. Docs. CV-1 at 4, CV-2 at 3–11. Before jury selection on the first day of trial, the Court held a hearing during which attorney Doherty brought to the Court's attention a medical report by Dr. Douglas R. Sinclair. Doc. CR-109 at 3–4 [transcript of pretrial hearing]; *see* Court Exh. 1. In addition, Rendon was placed under oath and questioned by the Government, attorney Doherty, and the Court regarding his memory. Doc. CR-109. Rendon asserts that Dr. Sinclair's medical report, along with Rendon's testimony at this pretrial hearing, demonstrate that he was incompetent to stand trial and to decide whether to testify. Thus, Rendon argues that attorney Doherty should have moved for a competency hearing.

In pertinent part, 18 U.S.C. § 4241(a) provides: "[a]t any time after the commencement of

a prosecution for an offense and prior to the sentencing of the defendant . . . the defendant . . . may file a motion for a hearing to determine the mental competency of the defendant," which the court shall grant "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent." *Id.*

A defendant is mentally incompetent to stand trial if "he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id.*; *see also Godinez v. Moran*, 509 U.S. 389, 396 (1993); *United States v. Mateo*, 2011 WL 411438, at *5 (11th Cir. Feb. 9, 2011) (citation omitted); *United States v. McDowell*, 2006 WL 3837490, at *1 (M.D. Fla. 2006 (Steele, J.)). Thus, "[t]he legal test for competency is whether the defendant had 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and whether he had 'a rational as well as factual understanding of the proceedings against him.'" *United States v. Cruz*, 805 F.2d 1464, 1479 (11th Cir. 1986) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

The following facts are suggestive of Rendon's competency at the time of trial: (1) Up until the date of trial, Rendon continued to manage a half dozen or more rental properties—taking care of the properties, collecting rents, maintaining records and legers—that were collectively worth over a million dollars (Docs. CR-109 at 7–10, CR-169 at 202; PSR ¶¶ 13–19); (2) Rendon's treating physician, Dr. Rasulo, indicated in a medical report, dated just one year prior to the commencement of trial, that Rendon's "mental status [was] normal"[6] (Doc. CR-109

---

[6] Dr. Rasulo's report, as summarized by attorney Doherty on the record during the pretrial hearing, stated:

> [Rendon's] recent and remote memory are within the normal limits, immediate recall is normal. There's no aphasia, apraxia or agnosia noted. No right or left confusion was appreciated. There's no visual special distortions. No signs of thought disturbances. The patient was oriented as to time, place and person

at 16; *see* Court Exh. 2; PSR ¶ 49); (3) attorney Doherty stated on the record that he "never had any impression that [Rendon] had a mental or memory problem"[7] (Doc. CR-109 at 19); and (4) Rendon himself "denie[d] any history of mental or emotional problems or history of treatment for such problems" when interviewed for his Pre-Sentence Report.[8] PSR ¶ 50. In addition, Special Agent Dan Gordon testified at trial that Rendon appeared "alert and lucid" and did not appear to have any trouble understanding Special Agent Gordon when the agent questioned Rendon at his home. Doc. CR-169 at 89, 103. There is also no evidence that Rendon engaged in any irrational or inappropriate behavior at trial, and Rendon's underlying offense was not particularly bizarre.

Rendon relies primarily on two sources to support his claim that he was incompetent at the time of trial: (1) a letter from Dr. Sinclair, dated only three days prior to the commencement of trial, that attorney Doherty read into the record on May 12, 2008 (Doc. CR-109 at 3–4); and (2) a report by Dr. Darren M. Rothschild, a forensic psychiatrist who reviewed information relating to Rendon's case and completed a report dated December 23, 2010. Doc. CV-2 Exh. 1. In his letter, Dr. Sinclair states:

> I'm seeing Mr. Miguel A. Rendon 8/02/1934 in my neurologic practice here in Bradenton. I am writing this letter at the request of he and his wife. He has a mild
>
> attention span and concentration are normal and the fund of knowledge is normal. He does have mild memory loss which, of course, every 71-year-old has.

Doc. CR-109 at 16–17; *see* Court Exh. 2.

---

[7] As the Eleventh Circuit has stated, "'[b]ecause legal competency is primarily a function of [a] defendant's role in assisting counsel in conducting the defense, the defendant's attorney is in the best position to determine whether the defendant's competency is suspect.'" *United States v. Mateo*, 2011 WL 411438, at *5 (11th Cir. Feb. 9, 2011) (quoting *Watts v. Singletary*, 87 F.3d 1282, 1288 (11th Cir. 1996)).

[8] The only exception Rendon indicated was "depress[ion] because of being tried and convicted of the instant offense." PSR ¶ 50.

cognitive impairment which is a sign or form of early dementia.

He would be expected to have some difficulty with memory or if under duress, such as testifying for Court, could have some trouble formulating thought. I have some suspicion that he also has depression, a likely reaction to his given circumstance, which can impair memory and attention.

This should be taken under consideration if he is to testify. If you have any further questions, contact me. Douglas Sinclair, D.O., Bradenton Neurology.

Doc. CR-109 at 3–4; *see* Court Exh. 1. After hearing attorney Doherty read the letter into the record, and after listening to Rendon answer questions under oath, the Court stated, at sidebar: "This defendant has an absolute perfect right to take the stand if he elects to do so. If he elects to do so, if this is a sample of his memory, and what he remembers and what he doesn't remember, we may have a few problems." Doc. CR-109 at 16. Later in the pretrial hearing, the Court stated: "You all are put on notice as far as I'm concerned, both sides, both the government and the defense. You do whatever you want to do." *Id.* at 19.

### Recent Evaluation By Dr. Darren M. Rothschild

Recently, Rendon retained Dr. Rothschild to retrospectively evaluate Rendon's competency to stand trial. Doc. CV-2 Exh 1. In his report, Dr. Rothschild cites the various sources he utilized to draw his conclusions regarding Rendon's competency: U.S. Department of Justice DEA Investigative Reports related to this case; documents provided by Rendon's wife; medical records from Dr. Sinclair; a telephone conversation with Dr. Sinclair; a letter from Rendon's wife to attorney Doherty; a telephone conversation with Rendon's son; telephone conversations with Rendon's wife; a telephone conversation with attorney Doherty; pretrial and trial transcripts, as well as the sentencing transcript; Rendon's appellate brief; and the United States' response to Rendon's appeal. *Id.* at 2–6. From these sources, Dr. Rothschild concludes:

> [T]he available information suggests that Mr. Rendon had problems in his ability to consult with his attorney and assist in preparing his defense, i.e., due from cognitive

dysfunction (poor memory, difficulty processing information, etc.). Mr. Rendon's cognitive problems, i.e., due to Mild Cognitive Impairment, were likely exacerbated in the context of the stress of standing trial (as stated in Dr. Sinclair's letter).

*Id.* at 6–7. However, Dr. Rothschild readily acknowledges the factors that limit his ability to assess Rendon's competency. In the first paragraph of his report, Dr. Rothschild states: "At the time of this communication, FCI Coleman would not permit a direct evaluation of Mr. Rendon's mental status,[9] which limits my ability to reach certain conclusions and adds limitation to the inherently challenging task of retrospectively evaluating competency." *Id.* at 2. At the end of his report, Dr. Rothschild reaffirms this assertion: "Due to the aforementioned limitations, I cannot reach conclusions with a reasonable degree of certainty regarding the nature of Mr. Rendon's reported cognitive problems." *Id.* at 6.

While preparing his report, Dr. Rothschild contacted attorney Doherty on December 7, 2010, and had a "[b]rief telephone conversation" with him about Rendon. *Id.* at 5. During the conversation, attorney Doherty stated that he would "'not be surprised if (Mr. Rendon's) mental capacity was not all there [at the time of trial] ... He was not hitting on all cylinders.'" *Id.* This statement appears to conflict with an assertion attorney Doherty made at the pretrial hearing on May 12, 2008: "I [attorney Doherty] never had any impression that [Rendon] had a mental or memory problem." Doc. CR-109 at 19.

Because of (1) the discrepancy between statements made by attorney Doherty at the time of trial and those made during a recent telephone conversation with Dr. Rothschild, and (2) the concern the Court expressed during the pretrial hearing about Rendon's ability to testify, the

---

[9] The Bureau of Prisons found that Rendon did not demonstrate a need for a private examination of his competency. Doc. CV-14 at 2.

14

Court finds that an evidentiary hearing would aid in the resolution of ground one of the motion to vacate.

Accordingly, the Court orders:

1. An evidentiary hearing is set for **FRIDAY, OCTOBER 14, 2011, AT 10:30 A.M.** before the undersigned United States District Judge in Courtroom 14A **on ground one only**. Specifically, the Court must determine whether attorney Doherty was ineffective for failing to move for a competency hearing in light of Dr. Sinclair's medical report and Rendon's testimony at the pretrial hearing, about which the Court itself was concerned.

2. The Government is ordered to produce Miguel A. Rendon for the hearing, and to transport him to Tampa, Florida, **on or before October 1, 2011**, to allow counsel to meet with him prior to the hearing. **The Government will prepare the necessary paperwork and submit the paperwork to the United States Marshal's Service to ensure that Rendon is present at the hearing.** The Government shall advise Rendon's counsel as to where Rendon will be housed in Tampa, Florida.

3. The magistrate judge is requested to appoint counsel, **on or before September 15, 2011**, to represent Rendon at the evidentiary hearing.

ORDERED at Tampa, Florida, this _15th_ day of July 2011.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

AUSA: Christopher Tuite
Patrick D. Doherty, Esq., Counsel for Defendant Rendon
United States Marshal's Office
Carrie Williams, Courtroom Deputy- Honorable Magistrate Judge Wilson
Miguel A. Rendon